BYRON JACKSON IRON WORKS v. UNITED IRON WORKS.

(Circuit Court, N. D. California. October 16, 1911. On Petition for Rehearing, April 29, 1912.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—COUNTERBALANCE FOR CENTRIFUGAL PUMPS.

The Jackson patent, No. 666,869, for a counterbalance for centrifugal pumps, covering a combination which includes a variable-controlled pressure chamber regulated by a plug, and No. 729,870, for an improvement on the same, were not anticipated, and disclose invention; also *held* infringed.

2. EQUITY (§ 392*)—REHEARING—TIME FOR FILING PETITION.

The provision of equity rule 88 (29 Sup. Ct. xxxvii) that no rehearing shall be granted after the term at which the final decree of the court shall have been entered and recorded if an appeal lies to the Supreme Court, but, if no appeal lies, the petition may be admitted at any time before the end of the next term in the discretion of the court, has become inapplicable since the passage of Act March 3, 1891, c. 517, §§ 5, 6, 26 Stat. 827, 828 (U. S. Comp. St. 1901, p. 549), establishing the Circuit Courts of Appeals by which an appeal is given in all equity causes, and the court now has power to entertain a petition for rehearing only during the term at which the decree was entered.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 834–851; Dec. Dig. § 392.*]

In Equity. Suit by the Byron Jackson Iron Works against the United Iron Works. On final hearing and petition for rehearing. Decree for complainant, and petition for rehearing dismissed.

Chas. E. Townsend, for complainant.
Wm. F. Booth and N. A. Acker, for respondent.

VAN FLEET, District Judge (orally). [1] This is a suit for the infringement of two certain patents numbered, respectively, 666,869 and 729,870, owned by the complainant. I have reached the conclusion from my examination of the case that the decree must go in favor of the complainant, and I will state my reasons briefly, but in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such way that perhaps counsel who are interested will be able to appreciate them.

The patents involved cover a device for an end-thrust counterbalance for centrifugal pumps; the first covering a combination which includes a variable controlled pressure chamber regulated by a plug, and the second being merely an improvement upon that by making this plug a movable one so as to meet the necessities which I shall suggest in the way of equalizing pressure.

It appears that in this art the hydraulic pressure is of a variable character, and, in practice, this pressure must be controlled in such a way as to hold the runner or impeller of the pump in as nearly a state of equilibrium with reference to its casing as is possible in order to successfully operate those devices. In the art of centrifugal pumps, such as these—they involve devices for vertical pumps—there is an impeller or runner inclosed in a casing that is sunk in the well. The runner is upon a shaft which reaches from the surface, and is propelled by any appropriate method of propulsion—either a gas engine or electricity or other appropriate means—and the conditions are such that it seems to be absolutely essential to the successful operation of such a device that the runner must be kept free from any fixed metal bearings in order to avoid destructive friction.

In the practice of the art, as I have suggested, there are two different sources of hydraulic pressure. In the first place, the weight of the implements themselves, the shaft and the runner, is such as to give a tendency to and induce a downward thrust of the parts, and this is accentuated as well by the intake or suction pressure upon the upper side of the runner from whence the water is received from the yoke. The tendency of this pressure is to induce the runner, which is arranged in the casing and the running joints of which provide a certain lateral movement, to approach, in accordance with the preponderance of the pressure, to one side of the casing or the other. Now, if it approaches too closely to either side, it causes what is termed in the art "skin friction" or "jet action," which is detrimental to, if not destructive to, the successful operation of the pump. The purpose of the devices embraced in these patents is to so control that pressure as to bring about an action of the runner which will hold it in equilibrium with reference to its casing. There are two opposite pressures; the first being that which I have indicated, and the second being the pressure of the head pumped against. The pressure of the head pumped against works down through this running joint, the lower joint, and into an air chamber underneath the runner, and the tendency of that is to uplift and to cause an upward thrust of the runner; that is, to throw the runner up toward the upper side of the casing, whereas the opposite pressure is to throw it down against the bottom of the casing. In the devices as they had existed prior to the ones involved, while there were pressure chambers consisting of the interior of the runner on the upper or intake or suction side and also in the space underneath the runner and between it and its casing, those chambers were largely, although not entirely, uncontrolled, the system of ports giving communication between the air chamber underneath the run-

ner and opening into the interior of the runner, which would relieve an undue pressure arising in the air chamber underneath the runner, but it was not controlled so that it would maintain a state of equilibrium under all conditions.

The patent which is alleged in the answer as an anticipation or as having an invalidating effect upon those involved here is the patent that was issued to one of the Jacksons in 1890, some 10 or 11 years before the first of the present patents was issued. That device was of the character I have indicated. It did have a pressure chamber underneath the runner which the experts on the two sides differ about. One calls it a vacuum chamber, and the other calls it a pressure chamber. I do not care which it is, as in my judgment it is not material. The material thing to my mind is that it was an uncontrolled pressure chamber, and did not meet the requirements of the varying conditions that arise in centrifugal pumping. That device, as it appears from the evidence, was in its nature a figured balance pump; that is, knowing the conditions that would have to be met, the machine or pump would be built with reference to those precise conditions, and within a variation of 40 or 50 feet in the level of water it would work fairly well, but it was found to be entirely inadequate to meet the conditions which were brought about by the necessities of deep well pumping; that is, going from 150 to 450 or 500 feet.

The first device in suit, which I have mentioned, provides what appears to be essentially a pressure chamber under the foot of the runner, a central opening or port from that chamber into the interior of the runner, and this port is controlled by a plug fixed to the bottom of the casing in such manner that, when the upward thrust of the runner from the pressure of the head pumped against is such as to throw the runner up a certain distance, this plug is withdrawn from the port, and thereby the excess pressure is enabled to escape through this port into the interior of the runner, and thereby equalize the pressure so that, immediately sufficient pressure has escaped, the runner falls back, the plug re-enters the port, and it is thereby maintained in equilibrium in the casing.

The second patent—both are alleged to be infringed by the device of the defendant—simply provides a method of making this plug movable by set screws instead of being rigidly fastened to the bottom of the casing. It is so adjusted that it may be moved by the set screws and thereby the equilibrium of the runner or impeller can be arbitrarily changed to suit any conditions that arise in practicing the art. And it has been found that this device has met the requirements of the art in the particulars that I have indicated in so regulating the two opposing pressures that the runner is maintained in its most favorable position in the interior of the casing to best accomplish the purpose for which it was designed.

The defenses are want of invention and want of infringement. The defendant does not rely strictly upon the defense of anticipation, because it is conceded by counsel that the claims of the patents involved cannot be read upon the prior art; but the defense really is

that the state of the prior art was such as to preclude invention. In other words, the claim is that the changes from the prior art found in these devices are simply such as would suggest themselves to any mechanic skilled in the art; and that, therefore, the patents are void for want of invention. I am entirely unable to agree with this view. As I have indicated, I think that this element of a variable pressure chamber controlled by this plug is something that was not found in substance or in effect in the prior art. The expert for the defendant claims that the same principle operated precisely under the Jackson patent of 1890, by reason of the fact, as he claims, that as the runner approached the bottom of the casing there was a throttling action upon the ports, which are found in that device, between the hub of the runner and the bottom or under side of the casing, and that this brought about the same adjusting result in the way of equalizing the pressure as the present device. But the evidence to my mind is entirely against that theory proving true in practice. The evidence shows that in that device—which, as I say, is designated by the witnesses as a device based upon a figured balance—when the runner would approach too closely to the bottom of the casing it would set up this skin friction and thereby cause such intense retardation as to necessitate frequently the stopping of the pump and adjusting the position of the runner by hand. And in that device the pressure had to be taken care of by thrust collars. The devices in suit are entirely relieved from that necessity. The pressure is controlled automatically through the fact that, when it becomes too great in either direction, it is adjusted by the automatic action of this central port coacting with this plug, as I have indicated.

It is claimed that the second device, that which simply changes the rigid or fixed plug into a movable plug, is clearly invalid because it was merely an advance or improvement in the nature of a mechanical change. But I think it involves very much more than that. The evidence discloses that that change has brought about, with reference to the device of the first patent involved, a very decided degree of greater efficiency; and, moreover, it has done away with the necessity for the making of different sized pumps for different conditions; it being so devised as to adjust this variable pressure at whatever depth the pump may have to be placed, thus eliminating the necessity of building a pump with reference to the particular necessities presenting themselves, and has thereby relieved the art of the necessity of different sizes of parts such as were necessitated by the device which is first counted upon. And I am satisfied that that later device, as well as the first one, exhibits the employment of the inventive faculty, and that the defense of want of invention cannot therefore be sustained.

The defense of want of infringement is based upon the claim that the state of the art was such that the claims of those patents must be restricted to the precise form of device which is described in those patents, and that they are not entitled to the doctrine of equivalents to an extent which would result in making the device of the defendant an infringing one. I am unable to agree with this view. The de-

fendant's device, while structurally different in some respects, the port being constructed in a somewhat different manner, nevertheless works, and I think that it is practically conceded in the argument of counsel for the defendant that it works upon precisely the same principle.

Holding as I do that the invention involved in the two patents sued upon is of that substantial nature which entitles it to the benefit of the doctrine of equivalents, I am very clearly of the opinion that the defendant's device is an infringement upon those devices, and that, therefore, as I have suggested, a decree must go in favor of the complainant for an injunction as sought in the bill, and for such other relief as is therein prayed.

### On Petition for Rehearing.

Charles E. Townsend, for plaintiff.
Miller & White, for defendant.

VAN FLEET, District Judge (orally). [2] In the case of the Byron Jackson Iron Works v. United Iron Works an application for rehearing has been filed. It appears that the application was filed at the term subsequent to the term at which the decree was entered, and a motion has been made to dismiss the petition upon the ground that it comes too late. The petition for rehearing is filed under equity rule 88 (29 Sup. Ct. xxxvii), which provides:

"Every petition for a rehearing shall contain the special matter or cause on which such rehearing is applied for, shall be signed by counsel, and the facts therein stated, if not apparent on the record, shall be verified by the oath of the party or by some other person. No hearing shall be granted after the term at which the final decree of the court shall have been entered and recorded, if an appeal lies to the Supreme Court. But if no appeal lies, the petition may be admitted at any time before the end of the next term of the court, in the discretion of the court."

It is contended on behalf of the moving party that the case is one which falls within the terms of this rule making it essential that the petition be filed within the term at which the decree was entered. The decree was one in a patent case determining all the substantive questions of right litigated between the parties, and directing that a reference be had to the master for the purpose of stating an account. Such a decree I find under the authorities to be essentially a final decree; in other words, it is one where in order to preserve their rights the losing party is compelled to appeal, and, as an appeal is afforded under the law, it is in its nature a final decree. In other words, the mere fact that there remains the formal matter of the necessity of an accounting does not take it out of the category of a final decree in the contemplation of the law; the essential rights of the parties being all determined by the decree. But, conceding this, counsel for the petitioner claim that the case falls within the last provision of equity rule 88, which I have just read; that is that no hearing shall be granted after the term at which the final decree shall have been entered and recorded, "if an appeal lies to the Supreme Court," but that, if no appeal lies, the petition may be entered at any

time before the end of the next term in the discretion of the court. I am satisfied from my examination of this question that that provision of rule 88 has become inapplicable. That rule has been in existence for a great many years, and was in existence long prior to the change in the judicial system which established the United States Circuit Courts of Appeals, under which act an appeal is given in all causes in equity to the Circuit Court of Appeals. I am of opinion, as stated by Judge Shiras in his very excellant treatise on Equity Practice in the Federal Courts, and by other writers on the subject as well, that since the Court of Appeals Act was passed that provision of the rule giving the privilege of filing a petition for rehearing after the expiration of the term at which it was entered has become inapplicable; that is, all cases are now within the category contemplated by the rule that, where there is the right of appeal, the petition for rehearing must be filed at the term at which the decree is entered in order to keep alive the power of the court to review it, otherwise the court loses jurisdiction.

I am satisfied, therefore, that, so far as the questions involved depend upon the construction of the rights of the parties arising under equity rule 88, the petition comes too late. I may add, further, that so far as the petition is one addressed to the discretion of the court the showing is not such as to induce a favorable view as to the diligence used in making the application. I am therefore of opinion that in both views the motion to dismiss the petition must be granted, and that will be the order.